FITZGERALD *v.* THOMPSON TOWING & WRECKING ASS'N.

1. NOVATION—WHAT CONSTITUTES—EVIDENCE.

A sale of the assets of a corporation was consummated by assigning all of its stock to representatives of the purchasers, and it was agreed between the parties to the sale that all outstanding debts of the corporation at the time of the sale should be paid by the seller. The president and manager of the corporation was retained as its local manager with limited authority, and, while acting in that capacity, gave, without authority, a note purporting to be signed by the corporation for an indebtedness due plaintiff when the sale was made. Plaintiff had no notice of the liability of the sellers for existing indebtedness nor of the limitation on the manager's authority. *Held*, that there was no novation substituting the prior owners of the stock as plaintiff's debtors, and that the coporation was still liable.

2. ESTOPPEL—WHAT CONSTITUTES.

A creditor of a corporation, the assets of which had been sold and the sale consummated by assigning the entire capital stock to the purchasers, *held*, not estopped to assert his claim against the corporation by failure to include it in a list of claims given in response to a request by the new management for the " outstandings."

Error to St. Clair; Law, J. Submitted December 8, 1905. (Docket No. 182.) Decided March 5, 1906.

Assumpsit by James H. Fitzgerald and Thomas Fitzgerald against the Thompson Towing & Wrecking Association for goods sold and delivered. There was judgment for plaintiffs, and defendant brings error. Affirmed.

*Phillips & Jenks*, for appellant.

*Moore & Wilson*, for appellees.

MOORE, J. This case was tried by the judge without a jury. The judge made findings of fact substantially as follows:

"The plaintiffs are a copartnership under the name of the Dry Dock Iron Works, doing business at the city of Port Huron, and defendant is a corporation organized under the laws of the State of Michigan. During all the time covered by plaintiffs' bill of particulars the tugs mentioned therein were owned by the Thompson Towing & Wrecking Association, of which corporation Charles D. Thompson was president and general manager, having authority to contract bills on behalf of the tugs and also on behalf of the corporation.

"Some time prior to the 1st of August, 1899, the stockholders of the Thompson Towing & Wrecking Association (Charles D. Thompson and Charles L. Boynton owning substantially all the stock) entered into an agreement with Cleveland, Ohio, parties for the sale of all their tug property to said parties. This agreement was consummated on the 9th day of August, 1899, by Thompson and Boynton procuring all of the stock of the Thompson Towing & Wrecking Association and assigning it to Cleveland parties or to the Great Lakes Towing Company. Immediately after such sale all the former officers of the Thompson Towing & Wrecking Association resigned, and Cleveland parties were elected to succeed them.

"Under the terms of the sale, it was provided that all bills against any of the vessels, or against the defendant corporation, incurred or owing up to August 1, 1899, were to be paid and satisfied by Thompson and Boynton, * * * all accounts payable to the corporation up to such date were to be and remain the property of Boynton and Thompson, on behalf of the old stockholders. For all business done after the 1st of August, 1899, the proceeds were to accrue to the benefit of the new stockholders, and they were to satisfy all indebtedness accruing after that date. The officers of the defendant corporation after said date were Thomas F. Newman, of Cleveland, president and treasurer, W. H. Wardwell, secretary, and William A. Collier, general manager, and no person other than these officers was authorized to contract any indebtedness or make payment of bills of any kind against the corporation. Charles D. Thompson was retained as local manager for the defendant corporation and was authorized to procure the necessary supplies and repairs for tugs under the direction of the Cleveland officers. But no notice of the contract by Thompson and Boynton to pay all debts against the Thompson Towing & Wrecking Association

up to August 1, 1899, was brought to the attention of the plaintiffs. Nor did the plaintiffs ever release the defendant from its liability upon the account here sued upon, and agree to look to said Thompson and Boynton or to either of them for payment thereof. Nor did the plaintiffs ever receive any actual notice of any limitation placed by the owners of the stock of the defendant corporation upon the authority of Charles D. Thompson after August 1, 1899, except that on or about the 9th of November, 1901, plaintiffs became advised that Thompson's connection with the Thompson Towing & Wrecking Association was dissolved.

"After the ninth day of August, 1899, the custom in all cases was to send all bills to Cleveland, where they were audited by the president, secretary, and general manager of the defendant, and, when so audited and approved, they were paid by check of the Thompson Towing & Wrecking Association, signed by the treasurer and countersigned by the secretary at Cleveland. This was the manner of auditing and paying all bills paid to the plaintiffs for work done by them on any of the defendant's tugs after August 9, 1899, and for all work (of which there was a considerable amount) done on the different tugs during the years 1900, 1901, 1902, and 1903. The only act performed by Charles D. Thompson, the local manager, after August 9, 1899, in connection with bills against tugs located at Port Huron, was to stamp the bills 'Goods received. Prices correct,' and sign the name as local manager. But no express notice of any limitation upon Charles D. Thompson as local manager of his authority to contract and pay bills was ever given to plaintiffs, and they had no other implied notice of this limitation except such as could have been inferred from this method in which their bills were paid.

"After August 1, 1899, and during the years 1901, 1902, and 1903, the plaintiffs performed considerable work for defendant upon its different vessels, and also sold some supplies. In every case the bills for the same were audited in the manner above stated and paid by check of the defendant, signed in the corporate name and attested by the treasurer and president. There was some correspondence about this new work had by the plaintiffs directly with the Cleveland officers, but at no time was there any mention of the accounts upon which this suit is brought, so far as this record shows.

"Plaintiffs became advised of the fact that Thompson's interest in the corporation had been disposed of about the time the transfer took place, but they had no notice that any limitations had been placed upon his authority to contract bills for repairs to tugs. On August 1, 1899, the bills upon which this suit is brought were due and payable, and they were carried on the books of the plaintiffs charged against the several tugs, as shown by the bill of particulars. In November, 1901, Thompson resigned as local manager, and Mr. Root was appointed as his successor. At the time of Thompson's resignation, Mr. Root, the new manager, under the direction of Mr. Wardwell, the secretary, went to the office of plaintiffs and informed them of the termination of Mr. Thompson's connection with the company, and told the plaintiffs that he (Root) had been instructed to get a statement of all outstandings, and as a result of such statement be obtained from the plaintiffs the statements hereinbefore referred to, but no statement was rendered of the accounts sued upon, nor was any mention made of them. Mr. Root made no request for any bills against the defendant corporation as distinguished from the individual vessels. There is no testimony showing that the Cleveland officers knew about the old bills on which this suit is brought prior to about the time of bringing the suit. After November, 1901, Thompson has had no connection in any way with the defendant. About August, 1900, plaintiffs received from Charles D. Thompson a note for $1,000 to apply on these old accounts. This note is signed 'Thompson Towing & Wrecking Association, by C. D. Thompson.' This note was renewed at different times, and at one time Thompson paid $100 on the same. Thompson in fact had no authority to sign a note for the defendant, but the plaintiffs had no notice but what he possessed such authority until November 9, 1901.

" After Thompson's resignation as local manager in 1901, plaintiffs had some dealings with the new local managers concerning tugs; but the old claim was not mentioned to any of them up to the time that suit was commenced. At the time the obligation to protect the new owners of the stock of Thompson Towing & Wrecking Association from any indebtedness accruing prior to August 1, 1899, was given, both Mr. Thompson and Mr. Boynton were supposed to be financially responsible. Mr. Thompson became financially irresponsible some time

about 1900, and Mr. Boynton became financially irresponsible about the beginning of the year 1904.

" Immediately following the furnishing of the materials and the performance of the services on which this suit is brought, the plaintiffs furnished to the defendant by and through its local manager, Charles D. Thompson, a detailed statement of all services performed upon said tugs. So far as all subsequent transactions between the plaintiffs and defendant are concerned, the same general course was followed in each and every instance, to wit, the furnishing to the defendant by and through its local agent with a detailed statement of the work performed upon the various tugs monthly; the accounts on the books of plaintiffs were at first charged to the tugs individually and not to the defendant as a corporation, but, subsequently, on the 17th day of September, 1900, all balances remaining due upon the tugs hereinbefore described were carried to an account opened up in the name of the Thompson Towing & Wrecking Association, and the accounts against the tugs closed. Defendant did not know of this transfer until after the commencement of suit.

"After August 1, 1899, Thompson made payments on the old accounts. In so far as these old accounts were concerned for work done or materials furnished prior to August, 1899, the plaintiffs never had any dealings with any individuals except Thompson, and plaintiffs knew that Thompson had for collection and coming in a lot of tug bills for services rendered by these tugs prior to August 1, 1899, and Thompson told plaintiffs he would pay this money in when he collected it. No direct statement, however, was made by Thompson that he was making these payments, or that he claimed to be making them on his own responsibility, and not on behalf of the corporation."

The judge reached the following conclusions of law:

"'The method in which plaintiffs received payment of their bills for work done for defendant after August 1, 1899, was not such implied notice as should in law charge them with knowledge of any limitation placed by defendant on Charles D. Thompson, in reference to his authority to contract and pay bills. Neither are the plaintiffs estopped by the course in which they received payments of bills subsequent to August 1, 1899, nor by the fact that they neglected for a considerable length of time to notify the Cleveland officers of defendant regarding bills due

them for work done prior to August 1, 1899, from now recovering such sums as may be due them.

"Plaintiffs had a right to rely on the presumption that Thompson and Boyton, from whom the stock had been purchased by the Cleveland parties, or Charles D. Thompson, defendant's local manager, had notified the new stockholders of the existence of the claims for work done prior to August 1, 1899,"—

And rendered a judgment for the plaintiffs.

The case is brought here by writ of error. It is insisted by the defendant:

"1. That the dealings between the plaintiffs and Thompson amounted to a novation, in which the plaintiffs agreed to look to Thompson personally for this account, thereby releasing the corporation.

"2. That, if a novation be not established, the plaintiffs by their actions are estopped from now making claim against the defendant."

As to the first of these claims, we think it may properly be said that it is not shown plaintiffs ever agreed to relinquish the defendant corporation and look to Thompson and Boynton for their debt, and no novation is shown.

Are plaintiffs estopped from making claim against defendant? It is insisted that by the manner in which the business was done, by the changing of the form of the account on the books, by the rendering of the statements when Root asked for the outstandings, and the taking of the notes signed by Thompson, now that Thompson and Boynton are insolvent, plaintiffs are estopped. The question is not without difficulty. It must not be forgotten, however, that, when the debt was created, though the account was charged against the tug upon which the work was done, the debt was that of the defendant corporation. Later Cleveland parties, who are now the real defendants, saw fit to buy the tugs and business, but instead of taking bills of sale, for purposes of their own, thought it best to take over all of the stock of the defendant corporation, and for their protection entered into a secret contract with Thompson and Boynton to save the new owners from

any of the then existing indebtedness.. It is true defendants claim that when Thompson ceased to be their local representative, through Mr. Root, they requested a statement of plaintiffs' claim against the defendant corporation. Mr. Root's testimony is vague as to what was said. He testified he asked for the outstandings. Plaintiffs give an entirely different version of what occurred and say they. did not understand a request was made for a statement of all of their claim against defendant corporation. But it is said plaintiffs looked to Thompson for their pay. It is a fact, however, that the plaintiffs never took his personal note, but those given by him purported to be the notes of defendant corporation. It would have been easy for the new officers elected, when the transfer of the stock was made by Thompson and Boynton, to have said to the plaintiffs that Thompson and Boynton were to pay the existing debts. It would have also been easy for Root, when he asked for the outstandings, to put his request in such form that there would be no doubt as to what he desired. Neither of these things was done. The debt when originally created was the debt of the defendant corporation, and we think nothing has occurred to change that relation or to prevent plaintiffs from asserting it.

Judgment is affirmed.

McAlvay, Grant, Blair, and Hooker, JJ., concurred.